UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK by ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,<br><br>Plaintiff,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, INC. and SPECTRUM MANAGEMENT HOLDING COMPANY, LLC (f/k/a TIME WARNER CABLE, INC.),<br><br>Defendants. | 17 Civ. 1428<br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that Defendants Charter Communications, Inc. and Spectrum Management Holding Company, LLC (collectively, "Charter") hereby remove this civil action from the Supreme Court of the State of New York, County of New York (Court Index No. 450318/2017) to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1441.

## JURISDICTION

This civil action arises under the laws of the United States. Accordingly, this Court has removal jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441.

## BACKGROUND

1. On January 31, 2017 Plaintiff The People of the State of New York ("the State") filed a Complaint in the Supreme Court of the State of New York, County of New York (the "State Court"), captioned *The People of the State of New York by Eric T. Schneiderman, Attorney General of the State of New York v. Charter Communications, Inc. and Spectrum Management*

- 1 -

*Holding Company, LLC (f/k/a Time Warner Cable, Inc.)*, Index No. 450318/2017.  Service of summons was made on Charter on February 1, 2017.[1]  Charter has not answered the Complaint.

2. The State alleges that Charter is the largest residential "broadband Internet access service" ("BIAS") provider in New York.  Compl. ¶ 2.  As a BIAS provider, Charter is a "common carrier" within the meaning of Title II of the Federal Communications Act ("FCA"), 47 U.S.C. §§ 201 et seq., and is regulated by the Federal Communications Commission ("FCC").  *See Protecting and Promoting the Open Internet*, Report and Order on Remand, Declaratory Ruling and Order, 30 FCC Rcd 5601 (2015) ("*2015 Open Internet Order*").

3. The crux of the State's Complaint is that Time Warner Cable ("TWC," now part of Charter) misled the FCC and customers about its BIAS speeds.  *See* Compl. ¶ 15, (alleging that TWC "deceived" and "gam[ed] the FCC"); *id.* ¶ I.C.3 (alleging that TWC "Manipulated The FCC's Speed Tests"); *see also id.* ¶¶ 127–29, 131, 134, 220.  Pursuant to its own understanding of "Internet speed tests administered by the [FCC]," the State contends that TWC provided its customers with hardware that could not reliably achieve advertised speeds and persuaded the FCC to "exclude the poor results of the speed tests," which would have otherwise "revealed [TWC's] deceptive practices."  *Id*. ¶¶ 9–10.  The State further alleges that, through *independent* speed tests, *it* has concluded what the FCC did not—that TWC did not "reliably deliver promised speeds."  *Id.* ¶¶ 196–210 (conveying the results of three unofficial speed tests).  The State also alleges that TWC intentionally limited its subscribers' access to content by "throttl[ing]" access at points of interconnection with other networks, *i.e.*, "limit[ing] the ability of backbone and content providers to deliver online content" reliably.  *Id.* ¶ 286; *see also id.* ¶¶ 21, 287, 294.

---

[1] In accordance with 28 U.S.C. § 1446(a), copies of process, pleadings, and orders served thereon are attached hereto.

4. The State now brings suit claiming that TWC "[m]isrepresent[ed] the speed of [its] Internet Service," *id.* ¶¶ 335a; 340a; 345a; 349a; 352a, and "[m]isrepresent[ed] the ability of subscribers to reliably access online content," *id.* ¶¶ 335b; 340b; 345b; 349b; 352b, thereby giving rise to state law causes of action under:

(A) Executive Law § 63(12), which authorizes the State Attorney General to seek an order "enjoining the continuance of" "repeated fraudulent or illegal acts" and to seek "restitution and damages" therefore, *id.* ¶¶ 333–36;

(B) General Business Law ("GBL") § 349, which prohibits "[d]eceptive acts of practices in the conduct of any business, trade or commerce or in the furnishing of any service," *id.* ¶¶ 337–341; 347–349; and

(C) GBL § 350, which prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service," *id.* ¶¶ 342–46; 350–52.

**BASIS FOR REMOVAL**

5. The State's claims, though presented under state law, actually arise under federal law. Congress has provided that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Court has "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." *Id.* § 1331. The State's claims "aris[e] under" federal law within the meaning of 28 U.S.C. § 1331 because they are "so completely pre-empt[ed]" that they are "necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987).

6. The complete preemption doctrine permits removal when "Congress desired not just to provide a federal defense to a state law claim but also to replace the state law claim with a federal law claim." *Wurtz v. Rawlings Co.*, 761 F.3d 232, 238–39 (2d Cir. 2014). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). The complete preemption analysis requires "examin[ation]" of both the "complaint[]" and "the statute on which [Plaintiffs'] claims are based." *Aetna Health v. Davila*, 542 U.S. 200, 211 (2004). Where, as here, that examination reveals (1) the existence of "substantive" federal standards for the conduct complained of, and (2) an exclusive federal "cause of action" to enforce them, *Anderson*, 539 U.S. at 9, removal is permitted.

7. First, the FCC's rules constitute "substantive" federal law that governs the conduct alleged in the State's complaint. *Anderson*, 539 U.S. at 9. As the State recognizes, *supra* ¶ 3, the FCC regulates both BIAS speeds and representations thereof. Pursuant to the FCA, all common carriers (including BIAS providers) "engaged in interstate or foreign communication by wire or radio" must employ "just and reasonable" "practices . . . in connection with [their] communication service," and the FCC is statutorily charged with "prescrib[ing] such rules and regulations as may be necessary" to implement this requirement. 47 U.S.C. § 201(b). The FCC has imposed comprehensive regulation regarding BIAS speeds and representations. It mandates disclosure to consumers of "accurate information regarding the network . . . performance . . . of [a provider's] broadband Internet access services," 47 C.F.R. § 8.3, which includes "measure[ment] in terms of average performance over a reasonable period of time and during times of peak usage," *2015 Open Internet Order* ¶ 166. Further, the FCC has

promulgated a "safe harbor" under which BIAS providers participating in the FCC's "Measuring Broadband America (MBA) program"—including TWC— may "meet[] the requirement to disclose actual network performance" and avoid liability. *Id.* n.411, *see also id.* ¶¶ 176–185.[2]

8. The FCC has also approved a broadband "nutrition label" that provides "simple-to-understand" information regarding BIAS speeds that providers can furnish to consumers and thereby guarantee compliance with the FCC's disclosure requirements, and that label (like paragraph 166 of the *2015 Open Internet Order*) also calls for disclosure of median broadband speeds. *See* Consumer & Governmental Affairs, Wireline Competition, & Wireless Telecomms. Bureaus Approve Open Internet Broadband Consumer Labels, 31 FCC Rcd 3358 (2016); *see also* Guidance on Open Internet Transparency Rule Requirements, 31 FCC Rcd 5330, 5333 (2016) ("median" speeds comply with safe harbor). And the FCC also polices "misleading or inaccurate" statements made *within* the safe harbor disclosure. *2015 Open Internet Order* ¶ 181.

9. In addition to its mandatory network performance disclosure rules, the FCC's open Internet rules prohibit "throttling" as "an unjust and unreasonable practice under section 201(b)," and provide for oversight of interconnection arrangements with other network operators (such as transit providers and content delivery networks). *Id.* ¶¶ 106, 110, 289. The FCC also requires disclosure of, and oversees the reasonableness of, a BIAS provider's network management practices. *Id.* ¶¶ 159, 218–21; 47 C.F.R. § 8.3.

10. To implement "th[is] carefully tailored regulatory scheme," the FCC "announce[d] [its] intention to exercise [its] preemption authority to preclude states from imposing obligations on [BIAS] that are inconsistent" with the FCC's. *Id.* ¶ 433; *Comput. &*

---

[2] The federal safe harbor was promulgated in part at the *behest* of New York officials. *See id.* ¶ 176 n.434 (citing comments of Mayor de Blasio regarding "lack of clear, accurate information result[ing] in confusion with respect to key service features like download and upload speeds")

*Commc'ns Indus. Ass'n v. FCC*, 693 F.2d 198, 214 (D.C. Cir. 1982) ("[T]he [FCC's] jurisdiction is paramount and conflicting state regulations must necessarily yield to the federal regulatory scheme."). Given the State's distortion of the speed tests approved by the FCC and its reliance on other tests that the FCC *does not require or endorse*, Compl. ¶¶ 196–210, if the "state court vindicate[s] [the State's claim], the relief granted would necessarily force [Defendants] to do more than required by the FCC." *Bastien v. AT&T Wireless Servs.*, 205 F.3d 983, 989 (7th Cir. 2000) (finding complete preemption). The State is, in effect, "trying to invalidate" disclosures made pursuant to the FCC's reporting regime; its claim thus is necessarily federal. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488–89 (7th Cir. 1998) (finding complete preemption as to state law claim regarding "[a] tariff filed with" the FCC pursuant to the agency's regulations); *see also Aetna Health*, 542 U.S. at 217 ("[a]llowing [Plaintiff] to proceed with [her] state-law suits would 'pose an obstacle to the purposes and objectives of Congress'") (finding complete preemption).

11.    Second, there is also a federal "cause of action" to litigate the conduct the State considers deceptive. *Anderson*, 539 U.S. at 9. Section 207 of the FCA, 47 U.S.C. § 207, authorizes complaints against "any common carrier subject to the provisions of" Title II of the FCA, either directly before the FCC or "in any district court of the United States of competent jurisdiction." That is, Section 207 authorizes suit for, *inter alia*, violations of Section 201(b)'s prohibition on unjust and unreasonable practices, *see Glob. Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*, 550 U.S. 45, 47 (2007) (noting that the FCA "links § 201(b) to § 207"), and FCC precedent explicitly extends that prohibition to "deceptive marketing of . . . interstate communication services." *In re NOS Commc'ns, Inc.*, 16 FCC Rcd 8133 (2001);

*see also 2015 Open Internet Order* ¶ 291 n.747 ("unfair and deceptive marketing practices by interstate common carriers constitute unjust and unreasonable practices under Section 201(b)").

12. When, as here, the conduct complained of is expressly regulated under Section 201(b) and FCC regulations, the Section 207 cause of action is "exclusive." *Anderson*, 539 U.S. at 9. Section 207's text commands this conclusion. That section sets forth three operative clauses: [1] "Any person claiming to be damaged" [2] "by any common carrier subject to the provisions of this chapter" [3] "*may either*" pursue a remedy with the FCC or proceed in federal district court. Because this suit plainly satisfies the first two clauses, it triggers the third, which expressly limits available remedies to a federal forum. "By its express language, § 207" forbids "adjudication in any other forum" on claims arising from a violation of 47 U.S.C. § 201. *AT&T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002); *see also Boomer v. AT&T Corp.*, 309 F.3d 404, 420 (7th Cir. 2002) (Section 201 "demonstrates Congress's intent that *federal law* determine the reasonableness of" communications common carrier practices (emphasis added)).

13. A comparison of Section 207 of the FCA with Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, confirms this conclusion. The Supreme Court has explained that the latter's "preemptive force" is "so powerful" that it "displace[s] entirely any state cause of action" for certain LMRA disputes. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 26 (1983). As reflected in footnote 3 below, Sections 185 and 207 are materially identical; they should not be interpreted to produce disparate results.[3]

---

[3] 29 U.S.C. § 185 provides: "*Suits for violation of contracts between an employer and a labor organization*, representing employees in an industry <u>affecting commerce as defined in this chapter</u>, or between any such labor organizations **may be brought in any district court of the United States having jurisdiction of the parties**, without respect to the amount in controversy or without regard to the citizenship of the parties."

*See Metro. Life*, 481 U.S. at 65 (comparing "the jurisdictional subjection" of instant federal statute with "that of § 301 of the LMRA" to find complete preemption).

14. Notably, Congress has barred even other *federal* regulators from regulating "common carriers subject to" § 201, including the Federal Trade Commission ("FTC")—the regulator of "deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). This prohibition would be undercut if, instead of the FTC, *50 state attorneys general* were permitted to bring suit pursuant to their mirror prohibitions on "[d]eceptive acts or practices in . . . commerce." *See* GBL § 349; Compl. ¶¶ 337–341; 347–349.

15. The damages sought by the State further demonstrate that the State's claims are incompatible "[f]rom a systemic standpoint." *Cahnmann*, 133 F.3d at 491. Whereas federal law limits recovery to "the full amount of damages" and "a reasonable counsel or attorney's fee," 47 U.S.C. § 206, the State seeks, *inter alia*, statutory damages of "$5,000 for each violation" and "disgorge[ment]." Compl. pg. 79; *see Cahnmann*, 133 F.3d at 491 (finding complete preemption where "class actions of thousands or perhaps even millions of telephone subscribers, litigated in state court under state law, could disrupt the federal regulatory scheme").

16. This Circuit's precedent is in accord. Although the court in *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998), declined to find complete preemption for a "deceptive advertisement" claim, *id.* at 54, it nonetheless recognized that some state law claims implicating the FCC's regulatees *will* "actually ar[i]se under federal law," *id.* at 55. Critically, the court's contrary finding regarding deceptive advertising predated both the FCC's comprehensive

---

47 U.S.C. § 207 provides: "*Any person claiming to be damaged by any common carrier <u>subject to the provisions of this chapter</u> **may** either make complaint to the Commission as hereinafter provided for, or may **bring suit** for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, **in any district court of the United States of competent jurisdiction**; but such person shall not have the right to pursue both remedies.*"

regulation of this sphere and its conclusion that Section 201(b) governs this conduct. *See id.* at 54 ("while the FCA does provide some causes of actions for customers, it provides none for deceptive advertisement"); *cf. Boomer*, 309 F.3d at 424 ("following [FCC deregulatory action] . . . . federal law *no longer* completely preempts state law" (emphasis added)). Now that BIAS providers have been deemed common carriers and their advertising claims are subject to Section 201 of the FCA and the FCC's rules, the State's efforts to supplant the FCC's disclosure regime give rise to federal jurisdiction.

17. In addition, changes in the law since *Marcus* was decided further confirm the availability of removal here. Notably, *Marcus* overruled Second Circuit precedent holding that state-law fraud claims against telephone companies *were* completely preempted by federal common law. *See id.* at 53–54 (discussing *Nordlicht v. New York Tel. Co.*, 799 F.2d 859, 862 (2d Cir. 1986), in which the court held "the comprehensive legislation regulating telecommunications carriers evidenced Congress's intent" to completely preempt state jurisdiction). But, following the Supreme Court's 2003 *Anderson* decision, the Second Circuit recognized that the *Marcus* "framework" was wrong, and that the court of appeals was improperly "restrict[ing]" complete preemption to a "very narrow range of cases." *Briarpatch Ltd v. Phoenix Pictures*, 373 F.3d 296, 304 (2d Cir. 2004); *see also id.* ("Until the Supreme Court's recent [2003] decision in [*Anderson*] . . . we would have hesitated to extend the complete preemption doctrine"). The court of appeals now recognizes that complete preemption applies more broadly; it exists wherever—as here—a "federal statute . . . both preempts state law and substitutes a federal remedy for that law." *Id.* at 305.

18. Provided this Court finds complete preemption with regard to at least one of the State's claims, it has supplemental jurisdiction over the remainder under 28 U.S.C. § 1367

because they all "form part of the same case or controversy." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting 28 U.S.C. § 1367(a)).

## OTHER PROCEDURAL REQUIREMENTS

19. Removal is proper to this district pursuant to 28 U.S.C. § 112(b), which indicates that New York County is within the Southern District of New York.

20. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

21. Attached as Exhibit A are copies of all process, pleadings, and orders served upon Charter in this action.

22. A copy of this Notice of Removal will be promptly filed with the New York County Supreme Court and will be served on all counsel.

23. Charter hereby consents to removal pursuant to 28 U.S.C. § 1446(b)(2)(A).

24. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within 30 days after the service of summons upon Charter.

25. By removing to this Court, Charter does not waive any available defenses or admit any of the allegations made in the State's State Court Complaint.

Dated: February 24, 2017
     New York, New York

                Respectfully Submitted,

                LATHAM & WATKINS LLP

                By: /s/ Christopher J. Clark
                     Christopher J. Clark
                     Kathryn H. Ruemmler (*pro hac vice* application to be filed)

885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: chris.clark@lw.com
Email: kathryn.ruemmler@lw.com

Matthew A. Brill (*pro hac vice* application to be filed)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: matthew.brill@lw.com

*Attorneys for Defendants Charter Communications, Inc., and Spectrum Management Holding Company, LLC*