UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK,
by ERIC T. SCHNEIDERMAN, Attorney General of the
State of New York,

                                 Plaintiff,

          - against -

CHARTER COMMUNICATIONS, INC. and
SPECTRUM MANAGEMENT HOLDING COMPANY,
LLC
(f/k/a TIME WARNER CABLE, INC.),

                                Defendants.

17-cv-1428 (PAE)(KNF)

---

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO REMAND**

*Of Counsel*:

MANISHA M. SHETH
Executive Deputy Attorney
General for Economic Justice
KATHLEEN A. MCGEE
Bureau Chief
Bureau of Internet & Technology
SIMON G. BRANDLER
Senior Advisor & Special Counsel
AARON CHASE
MIHIR E. KSHIRSAGAR
KATE MATUSCHAK
Assistant Attorneys General
120 Broadway
New York, NY 10271
(212) 416-8000

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 2

ARGUMENT ............................................................................................................ 5

    A.   Spectrum-TWC Cannot Establish Complete Preemption to Justify Removal.................... 6

    1.   The FCA Contains a Broad Savings Clause Preserving State Law Claims........................ 7

    2.   FCA Sections 201 and 207 Do Not Contain Any Express Preemption Language ............ 10

    3.   The FCC Interprets the FCA as Preserving State Law Actions........................................ 12

    B.   Defendants' Remaining Arguments for Complete Preemption Are without Merit ........... 13

    1.   Paragraph 433 of the Open Internet Order Does Not and Cannot Support Complete Preemption ...................................................................................................................... 14

    2.   Section 207 Does Not Create an Exclusive Federal Cause of Action for Consumer Protection Claims ............................................................................................................ 15

CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

CASES                                                                PAGE(S)

*AmSouth Bank v. Dale,*
   386 F.3d 763 (6th Cir. 2004) ..................................................6, 15

*AT&T Corp. v. Coeur d'Alene Tribe,*
   295 F.3d 899 (9th Cir. 2002) ..................................................16

*Avco Corp. v. Machinists,*
   390 U.S. 557 (1968)..............................................................6

*Bastien v. AT&T Wireless Servs.,*
   205 F.3d 983 (7th Cir. 2000) ..................................................8

*Ben. Nat'l Bank v. Anderson,*
   539 U.S. 1 (2003).................................................................6, 9

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
   373 F.3d 296 (2d Cir. 2004)...................................................7, 9, 15

*Cahnmann v. Sprint Corp.,*
   133 F.3d 484 (7th Cir. 1998) ..................................................8

*Cedar Rapids Cellular Tel., L.P. v. Miller,*
   280 F.3d 874 (8th Cir. 2002) ..................................................12

*Centennial P.R. License Corp. v. Telecomms. Regulatory Bd.,*
   634 F.3d 17 (1st Cir. 2011)....................................................12

*City of Rome, New York v. Verizon Communications, Inc.,*
   362 F.3d 168 (2d. Cir. 2004)..................................................6, 10

*Fisher v. NOS Communs. (In re NOS Communs.),*
   495 F.3d 1052 (9th Cir. Nev. 2007)........................................8

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,*
   463 U.S. 1 (1983)..................................................................5

*In re Standard & Poor's Rating Agency Litig.,*
   23 F. Supp. 3d 378 (S.D.N.Y. 2014)........................................5

*Johnson v. Am. Towers, LLC,*
   781 F.3d 693 (4th Cir. 2015) ..................................................9, 11, 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)..........................................................................................5

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998)................................................................ *passim*

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987)...................................................................................6, 7, 15

*Minnesota v. Worldcom, Inc.*,
    125 F. Supp. 2d 365 (D. Minn. 2000).....................................................10

*Morgan Guaranty Trust Co. v. Republic of Palau*,
    971 F.2d 917 (2d Cir. 1992)......................................................................17

*Moriconi v. AT&T Wireless PCS, LLC,*
    280 F. Supp. 2d 867 (E.D. Ark. 2003).....................................................10

*Oneida Indian Nation v. County of Oneida*,
    414 U.S. 661 (1974)......................................................................................6

*Rubin v. MasterCard Int'l, LLC*,
    342 F. Supp. 2d 217 (S.D.N.Y. 2004).......................................................5

*Russell v. Sprint Corp.*,
    264 F. Supp. 2d 955 (D. Kan. 2003).....................................................8, 17

*Smith v. GTE Corp.*,
    236 F.3d 1292 (11th Cir. 2001) .................................................................9

*State ex rel. Nixon v. Nextel W. Corp.*,
    248 F. Supp. 2d 885 (E.D. Mo. 2003)....................................................10

*Sullivan v. American Airlines*,
    424 F.3d 267 (2d Cir. 2005)......................................................................6

*TPS Utilicom Servs. v. AT&T Corp.*,
    223 F. Supp. 2d 1089 (C.D. Cal. 2002) ....................................................8

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009).......................................................................................5

*Wurtz v. Rawlings Co., LLC*,
    761 F.3d 232 (2d Cir. 2014)......................................................................6

STATE STATUTES

New York Executive Law § 63(12) ...................................................... *passim*

New York General Business Law Article 22A, § 349........................................................... *passim*

**FEDERAL STATUTES**

28 U.S.C.
    § 1331......................................................................................................................1
    § 1441 et seq. ......................................................................................................1, 5
    § 1446......................................................................................................................1
    § 1447.............................................................................................................1, 2, 17


**FEDERAL ADMINISTRATIVE ORDERS AND DECISIONS**

*In re Inquiry Concerning High-Speed Access to Internet Over Cable and Other Facilities*, 17 FCC Rcd. 4798 (2002)........................................................................9

*In The Matter Of Joint FCC/FTC Policy Statement For The Advertising Of Dial-Around And Other Long-Distance Services To Consumers*, 15 FCC Rcd. 8654 (2000)....................................................................................................................13

*In The Matter Of Preferred Long Distance, Inc.*, 30 FCC Rcd. 16711 (2015)..............................13

*Protecting and Promoting the Open Internet*, Report and Order on Remand, Declaratory Ruling and Order, 30 FCC Rcd 5601 (2015).............................................. *passim*

*Report and Order and Further Notice of Proposed Rulemaking in the Matter of Empowering Consumers to Prevent and Detect Billing for Unauthorized Charges ("Cramming")*, 27 FCC Rcd. 4436 (2012) .................................................................13

## PRELIMINARY STATEMENT

Plaintiff, the People of the State of New York, by their attorney, ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, respectfully submits this memorandum of law in support of its motion to remand this case to the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. § 1447.

The Office of the Attorney General of the State of New York ("OAG") brought this action in New York State court to enforce New York's deceptive business practices and false advertising statutes. The Complaint alleges that defendants Charter Communications, Inc. and Spectrum Management Holding Company, LLC (f/k/a "Time Warner Cable, Inc.") (together, "Spectrum-TWC") engaged in a long-running systematic scheme to defraud and mislead subscribers to its Internet service by promising to deliver Internet service that it knew it could not and would not deliver. Spectrum-TWC's fraudulent and deceptive conduct violates Section 63(12) of New York's Executive Law as well as Sections 349 and 350 of New York's General Business Law Article 22-A. The OAG seeks injunctive relief, disgorgement, restitution, statutory penalties, and costs.

Without any proper basis, on February 24, 2017, Spectrum-TWC filed a Notice of Removal ("Notice") pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. The OAG now seeks remand of the action to the state forum where it belongs. It is black letter law that federal "arising under" jurisdiction can be based only on federal questions raised in a complaint. The OAG's Complaint raises no federal questions, asserts no federal causes of action, and relies on no federal legal theories. It is rooted entirely in the kind of consumer deception that is within the traditional purview of state law and is historically subject to enforcement in state court by the state's chief legal officer.

1

Spectrum-TWC seeks to wrest this action away from the state court forum where it was properly filed, arguing that removal is justified because Congress "completely preempted" any state consumer-protection claim against an Internet service provider ("ISP") such as Spectrum-TWC. But Spectrum-TWC's argument disregards the plain language of the Federal Communications Act ("FCA") and controlling Second Circuit precedent that such claims are not completely preempted.

To sustain its "complete preemption" argument, Spectrum-TWC would need to show that Congress intended the FCA to oust state court jurisdiction and to provide the exclusive federal remedy for claims of consumer deception against an ISP. Spectrum-TWC cannot establish this required showing of Congressional intent for the following four reasons: 1) the FCA contains a broad and unambiguous savings clause that explicitly preserves state enforcement actions; 2) the Second Circuit has held specifically that the FCA does not completely preempt state law consumer protection actions; 3) the relevant FCA language lacks any preemptive effect whatsoever – let alone the sweeping preemptive power required for a true, and very rare, case of complete preemption; and 4) consistent with the statutory text, the Federal Communications Commission ("FCC") has repeatedly recognized that the FCA preserves, rather than preempts, actions against ISPs under state law.

For these reasons, the OAG respectfully requests this Court to summarily remand this case to the state forum in which the Attorney General filed it. Moreover, the OAG requests this Court grant costs, expenses, and attorney fees to the OAG to pursuant to 28 U.S.C. § 1447(c), as there was no colorable basis for Spectrum-TWC's removal.

## FACTUAL BACKGROUND

On February 1, 2017, following a sixteen-month investigation, the OAG commenced this consumer fraud enforcement action in New York State Supreme Court. Complaint ¶ 1. The

action seeks to enforce three state consumer protection statutes prohibiting fraudulent and deceptive practices targeting New York consumers: Executive Law Section 63(12) and General Business Law ("GBL") Article 22-A, Sections 349 and 350.  The Complaint alleges that Spectrum-TWC[1] violated New York law through a systematic scheme to defraud and mislead New York consumers by promising to deliver Internet service that it knew it could not and would not deliver.  Complaint ¶ 3.  The allegations detail a scheme with two separate components: 1) Spectrum-TWC promised in its marketing Internet speeds that it knew it could not deliver to New York subscribers, *see generally*, Complaint ¶¶ 3, 75-241; and 2) Spectrum-TWC promised in its advertisements reliable access to online content, like Netflix, that it knew it could not deliver to New York subscribers.  *See, generally*, Complaint ¶¶ 3, 242-330.

Concerning the first component of the alleged scheme, the Complaint describes three causes for Spectrum-TWC's consistent failure to deliver the Internet speeds promised to its subscribers. Complaint ¶¶ 76, 80-83.  First, Spectrum-TWC leased deficient equipment to subscribers—equipment that, by the company's own account, was "not capable of supporting the service levels paid for."  Complaint ¶¶ 76, 101-177.  Second, ignoring the recommendations of its own engineers, Spectrum-TWC failed to maintain or upgrade its network as necessary to reliably deliver the promised speeds.  Complaint ¶¶ 178-220.  Third, Spectrum-TWC falsely assured its subscribers that they could achieve the same Internet speeds wirelessly as through a wired connection, despite knowing this was virtually impossible under real-world conditions. Complaint ¶¶ 221-241.

---

[1]  At the outset of the OAG's investigation and through May 18, 2016, the name of the entity under investigation was Time Warner Cable, Inc.  Complaint ¶ 28.  On May 18, 2016, Time Warner Cable, Inc. merged with, and into the defendants, Charter Communications, Inc., and its subsidiary, Spectrum Management Holding Company, LLC, who assumed all assets and liabilities of Time Warner Cable, Inc. *Id.*

The second component of the alleged scheme concerns Spectrum-TWC's failure to deliver the reliable, uninterrupted access to streaming Internet video content that it promised to its subscribers. Complaint ¶¶ 248-330.  The Complaint alleges that Spectrum-TWC deliberately allowed its connections with certain content providers, like Netflix, to become congested with traffic, thereby effectively throttling or slowing access to that content.  Complaint ¶ 265-278.  As a result, subscribers experienced the "buffering," "slowdowns," and other frustrations that Spectrum-TWC had promised they would never experience.  Complaint ¶¶ 249, 289-291.

The Complaint cites to numerous documents that show that Spectrum-TWC deliberately misled consumers and failed to provide them with the promised services.  For example, the Complaint recounts repeated episodes where, for financial reasons, top Spectrum-TWC executives rejected the pleas of their own engineers to resolve the network and equipment problems that were preventing subscribers from experiencing the speeds and reliability they had been promised.  *See, e.g.,* Complaint ¶¶ 121-126, 156, 172-173, 188.  The Complaint also quotes internal communications in which Spectrum-TWC officials acknowledge the company's failure to deliver on its marketing claims, at one point recognizing the "mismatch" between what the company promises in its advertisements and what it actually delivers subscribers.  Complaint ¶ 170.

The Complaint asserts five causes of action against Spectrum-TWC, each arising wholly under state law.  Complaint ¶¶ 333-352.  The first, second, and third causes of action allege that Spectrum-TWC violated New York Executive Law Section 63(12) by engaging in persistent fraud and illegality in the conduct of a business.  Complaint ¶¶ 333-346.  The fourth cause of action alleges that Spectrum-TWC violated GBL Section 349 by engaging in deceptive business practices. Complaint ¶¶ 347-349.  The fifth cause of action alleges Spectrum-TWC violated GBL

Section 350 by engaging in false advertising. Complaint ¶¶ 350-352.  None of these causes of action rely on an allegation that Spectrum-TWC violated federal law.[2]

## ARGUMENT

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A federal court may exercise removal jurisdiction over an action originally filed in state court only if it could have had "original jurisdiction" over the case. 28 U.S.C. § 1441(a). "Removal statutes are construed narrowly and all uncertainties are resolved in favor of remand in order to promote the goals of federalism, restrict federal court jurisdiction, and support the plaintiff's right to choose the forum." *Rubin v. MasterCard Int'l, LLC*, 342 F. Supp. 2d 217, 218 (S.D.N.Y. 2004) (citation omitted).  The removing party bears the burden of proving federal removal jurisdiction.  *Rubin*, 343 F. Supp. 2d at 219.

Under the longstanding "well-pleaded complaint rule, a suit 'arises under' federal law . . . 'only when the plaintiff's statement of his own cause of action shows that it is based upon federal law.'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (internal quotation omitted).  The presumption against removal is "especially strong" when a state brings an action to vindicate its sovereign interests in enforcing its own laws and in protecting its citizens from deceptive business practices.  *In re Standard & Poor's Rating Agency Litig.,* 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21

---

[2]  Spectrum-TWC's Notice misleadingly focuses on a handful of allegations that refer to the FCC in an attempt to recast the Complaint as being based on violations of federal law. To be sure, the Complaint addresses Spectrum-TWC's manipulations of publicly reported FCC tests, but only as part of Spectrum-TWC's broader effort to conceal its service failures from subscribers. *See* Complaint ¶¶ 9-10. The Complaint reviews the results of those tests, and of three others not conducted for the FCC, to show the pervasiveness and extent of Spectrum-TWC's harm to consumers. Complaint ¶¶ 207-210. As reiterated with respect to each of the five causes of action, the Complaint exclusively seeks to address "misrepresent[ations]" made to "subscribers." Complaint ¶¶ 333-352.  Plainly, based on both in its description of the wrong and its requested remedies, the Complaint is rooted firmly and solely in traditional state law.

n.22 (1983) ("Considerations of comity make [federal courts] reluctant to snatch cases which a

State has brought from the courts of that State.").  Here, the OAG's Complaint asserts only

traditional state-law consumer protection claims against Spectrum-TWC arising out of its

deceptive business practices and advertising to New York consumers.  These claims do not arise

under federal law, and indeed, the FCA expressly contemplates that such state actions can and

will proceed.  47 U.S.C. § 414.

A.  Spectrum-TWC Cannot Establish Complete Preemption to Justify Removal

Spectrum-TWC's notice of removal relies exclusively on the doctrine of "complete

preemption," a "narrow exception" to the well-pleaded complaint rule.  Notice ¶ 5; *Marcus v.

AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998); *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir.

2004).  Complete preemption exists in the extraordinary circumstance where "Congress desired

not just to provide a federal defense to a state law claim but also to replace the state law claim

with a federal law claim."[3]  *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014).

Importantly, the existence of a federal defense – whether based on a theory of express, conflict,

or field[4] preemption –does "not justify removal."  *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 9

and n. 5 (2003) ("[T]he proper inquiry focuses on whether Congress intended the federal cause

of action to be exclusive."); *City of Rome, New York v. Verizon Communications, Inc.*, 362 F.3d

---

[3]  The Supreme Court has found complete preemption in only four limited and extraordinary circumstances.  *See Anderson*, 539 U.S. at 10 (noting the "special nature of federally chartered banks"); *Metro. Life.*, 481 U.S. at 65-66 (identifying legislative history stating that claims by a beneficiary under the Employee Retirement Income Security Act ("ERISA") "are to be regarded as arising under the laws of the United States"); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) (explaining that tribal land claims are based on a "right of possession conferred by federal law, wholly independent of state law"); *Avco Corp. v. Machinists*, 390 U.S. 557 (1968) (holding that under Section 301 of the Labor Management Relations Act ("LMRA"), "[a]ny state law applied" to disputes between an employer and a labor organization "will be absorbed as federal law") (internal quotation omitted).
[4]  The Second Circuit has cautioned that field preemption and complete preemption should be "considered distinct" because complete preemption is a theory of removal jurisdiction and not a defense.  *Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005).

168, 176 (2d. Cir. 2004) (finding no complete preemption even as to a section of the FCA that expressly preempts some state action).

Complete preemption requires Congressional intent to "creat[e] an exclusive federal cause of action" through a "federal statute that *both* preempts state law *and* substitutes a federal remedy for that law." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (emphasis added); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987) ("[T]he touchstone of the federal district court's removal jurisdiction is . . . the intent of Congress."). The Second Circuit has repeatedly rejected "expansive interpretation[s]" of the complete preemption doctrine, stating that it "applies only where Congress has clearly manifested an intent to disallow state law claims in a particular field." *Marcus*, 138 F.3d at 54. Here, by contrast, the relevant statutory language, controlling case law, and the FCC's interpretation of its own authority show Congress's intent to permit false advertising and deceptive business practice claims against ISPs under state law and therefore this action should be remanded.

> 1. The FCA Contains a Broad Savings Clause Preserving State Law Claims

Congress included in the FCA a broad, unqualified savings clause that precludes finding complete preemption. 47 U.S.C. § 414. The FCA's savings clause states, in its entirety: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." *Id.* Remarkably, Spectrum-TWC's Notice omits any mention of the FCA's savings clause.

Relying on this same savings clause, the Second Circuit already has rejected the argument that the FCA completely preempts state-law consumer protection actions against common carriers. In *Marcus*, plaintiffs filed a complaint in New York State Supreme Court asserting six state law causes of action, including, as also alleged here, deceptive acts and practices in violation of GBL Section 349 and false advertising in violation of GBL Section 350,

arising out of AT&T's practice of rounding the duration of long distance calls up to the next higher full minute.  AT&T removed the action to this Court claiming that the FCA completely preempted plaintiffs' state law claims, thereby converting them into claims under the FCA. Reversing the district court, the Second Circuit recognized that "[t]he FCA not only does not manifest a clear Congressional intent to preempt state law actions prohibiting deceptive business practices, false advertisement, or common law fraud, *it evidences Congress's intent to allow such claims to proceed under state law*."  *Marcus*, 138 F.3d at 54 (emphasis added).

Every other circuit court that has considered the issue, with the exception of the Seventh Circuit,[5] has followed the Second Circuit's analysis in *Marcus*.  For example, the Ninth Circuit rejected an argument that the FCA completely preempted state law actions, finding that "there is no indication that Congress intended every state law cause of action within the scope of the FCA to be preempted."  *Fisher v. NOS Communs. (In re NOS Communs.)*, 495 F.3d 1052, 1058 (9th Cir. 2007).  Focusing on the FCA's savings clause, the court reasoned that "[a] savings clause is fundamentally incompatible with complete [ ] preemption; if Congress intended to preempt the entire field of telecommunications regulation, there would be nothing for section 414 to 'save,' and the provision would be mere surplusage."  *Fisher*, 495 F.3d at 1052 (citing *Marcus*). Similarly, the Fourth and Eleventh Circuits, as well as a number of federal district courts,[6] have

---

[5]  The only decisions that Spectrum-TWC cites finding complete preemption in the context of the FCA are from the Seventh Circuit.  Notice ¶ 10 (citing *Bastien v. AT&T Wireless Servs.*, 205 F.3d 983 (7th Cir. 2000) and *Cahnmann v. Sprint Corp.*, 133 F.3d 484 (7th Cir. 1998)).  Neither decision has been followed outside the Seventh Circuit, and both are readily distinguishable.  In *Bastien*, defendant argued that plaintiff's claims properly fell within the scope of Section 332(c)(3)(A) of the FCA, a section that expressly preempts state regulation of rates and market entry for mobile telephone service.  *Bastien*, 205 F.3d at 985-86.  In *Cahnmann*, plaintiffs disputed the terms of their contracts with a telecommunications provider.  The court found preemption on the ground that the contract at issue was a tariff filed with the FCC, which, therefore, was equivalent to a federal regulation.  A suit brought to enforce or invalidate it would, according to the court, therefore, necessarily arise under federal law.

[6]  *See TPS Utilicom Servs. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1099 (C.D. Cal. 2002) (distinguishing cases finding complete preemption under the LMRA and ERISA because those statutes "lack a savings clause analogous to FCA § 414" and finding that "the plain language of § 414 suggests no Congressional intent to provide removal jurisdiction"); *Russell v. Sprint Corp.*, 264 F. Supp. 2d 955, n. 1, 961 (D. Kan. 2003) (finding no complete preemption because "[t]his type of savings clause [i.e. § 414], which contemplates application of state law and

also followed *Marcus*'s holding that the FCA's savings clause forecloses a finding of complete preemption.  The Fourth Circuit reversed a lower court finding of complete preemption under the FCA because "[t]he savings clause demonstrates that congressional intent to completely preempt this area of law is neither clear nor manifest."  *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 703 (4th Cir. 2015).  The Eleventh Circuit declined to find complete preemption under the FCA because "the existence of this type of 'savings' clause [i.e. § 414] which 'contemplates the application of state-law and the exercise of state-court jurisdiction to some degree . . . counsels against a conclusion that the purpose behind the . . . Act was to replicate the 'unique preemptive force' of the LMRA and ERISA.'"  *Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir. 2001) (internal quotation omitted).

In an effort to avoid the Second Circuit's binding holding in *Marcus*, Spectrum-TWC argues that *Marcus* is no longer good law after *Anderson* and the Second Circuit's decision in *Briarpatch*.  Notice ¶ 17.  The argument fails.  First, neither *Anderson* nor *Briarpatch* even mentions *Marcus*, let alone overrules or questions it, and neither confronts a savings clause like the one present in the FCA.  Second, both cases involve traditional areas of longstanding federal regulation where the federal interest is particularly strong.  *See Anderson*, 539 U.S. at 11 ("The same federal interest that protected national banks from the state taxation . . . gives those provisions the requisite pre-emptive force to provide removal jurisdiction."); *Briarpatch*, 373 F.3d at 305 (explaining how "the Copyright Act lays out the elements, statute of limitations, and remedies for copyright infringement").   There is no comparable federal interest in the FCA.[7]

---

exercise of state court jurisdiction, indicates that Congress did not intend to 'replicate the unique preemptive force of the LMRA and ERISA'") (listing cases, including *Marcus*) (citations omitted).

[7]  Spectrum-TWC's argument that the Second Circuit's decision in *Marcus* pre-dated the FCC's determination that ISPs are "common carriers" is wrong.  Notice at ¶ 16.  At the time *Marcus* was decided, ISPs like Spectrum-TWC were treated as common carriers and it was only in 2002 that the FCC took them out of Title II regulation.  *In re Inquiry Concerning High-Speed Access to Internet Over Cable and Other Facilities*, 17 FCC Rcd. 4798 (2002).  In

*See Minnesota v. Worldcom, Inc.*, 125 F. Supp. 2d 365, 372 (D. Minn. 2000) ("Neither the text nor the structure of the FCA evidences an intent of Congress to regulate . . . [common carriers] so extensively as to preempt a lawsuit brought by a state law enforcement official to enforce state laws prohibiting deceptive advertising."); *State ex rel. Nixon v. Nextel W. Corp.*, 248 F. Supp. 2d 885, 893 (E.D. Mo. 2003) (same).

As the Second Circuit has repeatedly held, the text and structure of the FCA confirms that Congress intended to maintain a role for states in the dual state and federal regulatory regime governing common carriers.

> 2.  FCA Sections 201 and 207 Do Not Contain Any Express Preemption Language

Spectrum-TWC's argument that Sections 201(b) and 207 of the FCA operate to preempt all state-law consumer protection actions against common carriers is unavailing.  First, even if those sections had language expressly preempting state law – which they plainly do not – that would still not satisfy the complete preemption standard needed to justify removal. *City of Rome*, 362 F.3d at 176.[8]

Second, Section 201(b) and 207 do not preempt state law at all.  Section 201(b) merely provides in relevant part that "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful . . ."  Similarly, Section 207 simply states that "[a]ny person claiming to be damaged by

---

addition, Spectrum-TWC's citation of dicta in *Marcus* that that the FCA did not provide a cause of action for deceptive advertisements is without force for reasons described in section A.3 below.  Notice at ¶ 16.

[8] *See also Moriconi v. AT&T Wireless PCS*, LLC, 280 F. Supp. 2d 867, 876 (E.D. Ark. 2003) (concluding that Section 332 of the FCA, which includes language expressly preempting certain state actions concerning mobile telecommunications service providers, nevertheless "lacks the extraordinary preemptive power necessary to convert plaintiff's state law challenges to defendant's marketing and advertising practices into a federal claim").

any common carrier subject to the provisions of this Act may either make a complaint to the

Commission . . . or may bring suit for the recovery of the damages for which such common

carrier may be liable under the provisions of this Act, in any district court of the United States of

competent jurisdiction; but such person shall not have the right to pursue both such remedies."

Neither section expressly preempts state action or reflects any intention by Congress to make

federal causes of action the exclusive means of bringing consumer protection claims against

ISPs.[9]  Read together, Sections 201 and 207 merely provide a framework by which parties

seeking redress for violations of Section 201(b) may file either a complaint with the FCC or a

lawsuit against common carriers, but not both.  *See Johnson*, 781 F.3d at n. 6 ("§ 207 . . .

suggests that Congress did not intend for that provision to be the exclusive remedy for claims

against common carriers. . . . The section states that a party may bring an action to the FCC or

district court, but cannot seek relief from both, rather than suggesting that the FCC and the

district court are the sole places to bring an action.").

       Where Congress intended in the FCA to expressly preempt certain State law claims, it

included clear preemptive language.  For example, Section 253 states that "[n]o State or local

statute or regulation, or other State or local legal requirement, may prohibit or have the effect of

prohibiting the ability of any entity to provide any interstate or intrastate telecommunications

service."  47 U.S.C. § 253(a).  Yet, even the preemption language of Section 253 does not reflect

an intent to completely preempt state law claims.  Rather, in recognition of the importance of the

states' historic powers to protect their citizens against deceptive business practices, Section 253

---

[9]  Spectrum-TWC's argument in Paragraph 14 of the Notice that because other federal regulators cannot regulate common carriers, state regulators are also barred is without merit in light of the FCA's savings clause and the long history of concurrent federal-state regulation.  Spectrum-TWC cannot avoid the fact that Congress knew how to draft language to create exclusive federal jurisdiction and simply did not do so here.

carves out from its preemptive scope state actions that are necessary to "ensure the continued quality of telecommunications services, and safeguard the rights of consumers." *See Centennial P.R. License Corp. v. Telecomms. Regulatory Bd.*, 634 F.3d 17, 32 (1st Cir. 2011) (citing Section 253 and finding that "Congress took pains . . . to preserve traditional state authority over telecommunications services and to maintain a role for states within the dual regulatory regime"); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879-80 (8th Cir. 2002) (citing Section 253 and finding that "Federal telecommunications law implicitly acknowledges the importance of  . . . [Iowa's] interest [in enforcing its consumer protection statutes] by leaving states some latitude to 'protect the public safety and welfare' and 'safeguard the rights of consumers'").

### 3.   The FCC Interprets the FCA as Preserving State Law Actions

The intent of Congress, not executive agencies, governs whether there is removal based on "complete preemption."  It is telling, however, that the FCC, the agency tasked with implementing the intent of Congress by enforcing the FCA, has consistently refused to interpret the Act as completely preempting state law consumer protection actions.  Notice at ¶¶ 7-14.  In fact, after issuing the 2015 Open Internet Order,[10] the FCC unambiguously reiterated its longstanding position that Section 201 has no preemptive effect against state law consumer protection actions.

In a forfeiture order against a company found to have engaged in deceptive business practices in violation of Section 201(b), the FCC summarized a line of FCC decisions dating to 1996, stating plainly that "the [FCA] does not indicate a uniquely federal interest in common carriers' unfair and deceptive telemarketing practices and, therefore . . . *state efforts to address*

---

[10]  *Protecting and Promoting the Open Internet*, Report and Order on Remand, Declaratory Ruling and Order, 30 FCC Rcd 5601 (2015) ("2015 Open Internet Order").

*these practices are not preempted.*"  *In The Matter Of Preferred Long Distance, Inc.*, 30 FCC Rcd. 16711 (2015) at ¶ 15 (emphasis added).  Indeed, the FCC felt compelled to defend its own authority in this sphere by noting that "although the states share our interest in preventing deceptive marketing practices, we are not barred from addressing these fraudulent practices under our own authority over telecommunications."  *Id*.

Likewise, in a Policy Statement issued in 2000, in which the FCC recited the bases for its authority to regulate "deceptive marketing practices by common carriers" under § 201(b) of the FCA, the FCC noted that, by exercising such authority, it was "not preempt[ing] existing state law."  *In The Matter Of Joint FCC/FTC Policy Statement For The Advertising Of Dial-Around And Other Long-Distance Services To Consumers*, 15 FCC Rcd. 8654, 8657 at ¶10 (2000). Furthermore, in a Report and Order dated April 27, 2012 addressing certain billing practices of telecommunications providers in violation of Section 201(b), the FCC recognized that the FCA created a dual federal-state framework for protecting the rights of consumers against deceptive practices by common carriers.  In its Report and Order, the FCC both asserted its own authority to regulate misleading business practices by common carriers under Section 201(b), and specifically "acknowledge[d]" "the important role that all of our federal and state regulatory partners play in protecting consumers" against such practices.  *Report and Order and Further Notice of Proposed Rulemaking in the Matter of Empowering Consumers to Prevent and Detect Billing for Unauthorized Charges ("Cramming")*, 27 FCC Rcd. 4436, 4476 at ¶¶ 111, 114 (2012).  With an eye towards the future, the FCC confirmed its expectation "that the carriers and the states will continue to play their primary roles in handling consumers' . . . inquiries and complaints."  *Id*. at ¶ 111 (emphasis added).

B.  Defendants' Remaining Arguments for Complete Preemption Are without Merit

1.  <u>Paragraph 433 of the Open Internet Order Does Not and Cannot Support
    Complete Preemption</u>

Lacking the "clear[] manifest[ation]" of Congressional intent necessary to completely

preempt state consumer protection claims against common carriers, Spectrum-TWC instead

relies on Paragraph 433 of the 2015 Open Internet Order.  But that ignores the FCC's

longstanding recognition of concurrent federal-state jurisdiction.  Moreover, to argue that an

FCC order has any relevance at all, Spectrum-TWC must first recast the State's claims as relying

on violations of FCC regulations, such as, for example, the "Broadband Nutrition Label"

requiring disclosure of certain Internet speeds that came into effect on January 17, 2017.  Notice

at ¶¶ 3, 7-10.  That effort fails because the Complaint is rooted in violations of state consumer

fraud law and does not seek redress for violations of federal law.

In fact, Paragraph 433 of the Open Internet Order reiterates the FCC's consistent position

that states share the burden of enforcing consumer protection laws against ISPs and the FCC has

never contemplated that it has the authority to completely preempt state actions against ISPs.

The short excerpt from Paragraph 433 quoted by Spectrum-TWC at Paragraph 10 of its Notice

announces the FCC's intention to "preclude states from imposing obligations on [ISPs] that are

inconsistent" with the FCC's interests.  In other words, the FCC implicitly acknowledges that the

FCA underpins a dual federal-state regulatory framework in which states may impose obligations

on ISPs provided that they are <u>not</u> inconsistent with the FCC's interests.  2015 Open Internet

Order at ¶ 433.  To the extent Spectrum-TWC contends that the OAG's allegations "are

inconsistent" with the FCC's interests – which they are not – it is free to litigate the issue of

conflict preemption as a defense in state court.[11]  A conflict preemption defense based on

---

[11]  Indeed, virtually all of Spectrum-TWC's arguments, including that the OAG's claims conflict with Section
201(b)'s "just and reasonable" requirement, the FCC's safe harbor program, the nutrition label's requirements about

Paragraph 433 of the 2015 Internet Order, however, is a far cry from the complete preemption showing required to justify removal.  *Briarpatch*, 373 F.3d at 304-05.

Moreover, Paragraph 433 of the 2015 Open Internet Order, standing alone, is irrelevant to a complete preemption analysis because, at most, it is evidence of the FCC's intent – not, as required, of Congress's intent.  While federal agencies may employ the rulemaking process to preempt state action within the scope of the powers granted to them by Congress, this is merely ordinary "conflict preemption," and is thus insufficiently "extraordinary" to rise to the heights of complete preemption.  *See Briarpatch*, 373 F.3d at 304-05 (ordinary preemption is insufficient to create federal jurisdiction).  In *AmSouth Bank*, the Sixth Circuit reversed a district court finding that a federal regulation triggered complete preemption on the grounds that the preemptive effect of the regulation did not evince the requisite Congressional intent to create an exclusively federal cause of action: "The district court erred in holding that [the] federal regulation promulgated by the Federal Reserve Board, a federal agency, could completely preempt the Receivers' state law claims; only Congress can completely preempt a state cause of action."  *AmSouth Bank*, 386 F.3d at 776; *see also Id.* at 777 ("While [an] agency can create federal law, it cannot expand federal jurisdiction.").  Furthermore, had Congress intended to completely preempt state action under the FCA, it would not have delegated authority to the FCC to determine whether to preempt state action on a "case-by-case basis."  2015 Open Internet Order ¶ 433.  Such a piecemeal, contingent, and qualified approach to preemption is inconsistent with the "extraordinary preemptive power" required to achieve complete preemption.  *Metro. Life*, 481 U.S. at 64.

      2.  <u>Section 207 Does Not Create an Exclusive Federal Cause of Action for Consumer Protection Claims</u>

---

disclosure of median speeds, and the damages outlined in the FCA, are based on a theory of conflict preemption, and should be raised as defenses in the state court action.

15

Spectrum-TWC's argument that Section 207 of the FCA exhibits the required Congressional intent to create an exclusive federal cause of action for consumer protection claims against ISPs fails because Section 207 does not, on its face, create an exclusive federal cause of action.  Rather, the purpose of Section 207, as discussed above in Section A.2, is merely to preclude a person who has been damaged by a common carrier from simultaneously lodging a complaint with the FCC and bringing a suit for damages in federal court.  Spectrum-TWC's reliance on *AT&T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899 (9th Cir. 2002) is misplaced. Notice at ¶ 12.  In *AT&T*, the plaintiff "sued AT&T pursuant to Section 201 of the Federal Communications Act," and thus, it is unremarkable that such a suit is subject to the restrictions of Section 207.  295 F.3d at 904.  Spectrum-TWC has failed to cite any authority for converting state consumer protection claims into claims under Section 201 or for subjecting such claims to the restrictions of Section 207.

Moreover, despite Spectrum-TWC's conclusory assertion that Section 207 of the FCA and Section 185 of the Labor Management Relations Act ("LMRA") are "materially identical," a straightforward comparison of the two sections reveals that they are significantly different.[12] Section 185 of the LMRA reflects Congress's intent to ensure that certain cases arising within the sphere of that Act be adjudicated in federal court by expressly waiving the statutory diversity of citizenship and amount in controversy requirements for parties who wish to bring such claims.

---

[12] *Compare* FCA Section 207 ("Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.") *with* LMRA Section 185 ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.").  In addition, although Section 301 of the LMRA contains the same permissive language regarding remedies as Section 207 of the FCA, the LMRA does not contain a broad savings clause like the FCA.

29 U.S.C. § 185.  In contrast, Section 207 of the FCA includes no such waiver.  47 U.S.C. § 207. The differences between Sections 185 and 207 are consistent with Congress's decision to include a broad savings clause in the FCA, and no savings clause whatsoever in the LMRA.  *Johnson*, 781 F.3d at 703; *Russell*, 264 F. Supp. 2d at n. 1.

## CONCLUSION

For the reasons set forth above, the OAG respectfully requests this Court to remand this action back to State court and compel Spectrum-TWC to pay all "just costs and actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).[13]

Dated: March 13, 2017

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Plaintiff
By:


/s/ Aaron Chase
KATHLEEN A. MCGEE
Bureau Chief
Bureau of Internet & Technology
AARON CHASE
Assistant Attorney General
MIHIR E. KSHIRSAGAR
Assistant Attorney General
SIMON G. BRANDLER
Senior Advisor & Special Counsel
120 Broadway
New York, NY 10271
(212) 416-8000


*Of Counsel:*

---

[13] *See Morgan Guaranty Trust Co. v. Republic of Palau*, 971 F.2d 917 (2d Cir. 1992) (affirming grant of costs and attorney fees pursuant to 28 U.S.C. § 1447(c) and noting that "the statute as amended makes no reference at all to the state of mind or intent of the party removing the action, instead focusing strictly on the mere absence of subject matter jurisdiction").

MANISHA M. SHETH
Executive Deputy Attorney General for Economic Justice
KATE MATUSCHAK
Assistant Attorney General